UNITED STATES, Appellee,

v.

Christian N. DAVIS, Corporal,
U.S. Army, Appellant.

No. 96–1268.
Crim.App. No. 9300176.

U.S. Court of Appeals for
the Armed Forces.

Argued April 1, 1998.

Decided Sept. 23, 1998.

For Appellant: *David R. Dowell* (argued).

For Appellee: *Captain Elizabeth N. Porras* (argued); *Colonel Joseph E. Ross* and *Lieutenant Colonel Frederic L. Borch, III* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

Between August 1992 and January 1993, appellant was tried by a general court-martial composed of officer and enlisted members at Fort Lewis, Washington. In accordance with his pleas, he was found guilty of fraudulent enlistment, making a false official statement, adultery, and false swearing, in violation of Articles 83, 107, and 134, Uniform Code of Military Justice, 10 USC §§ 883, 907, and 934, respectively. Contrary to his pleas, he was found guilty of attempted premeditated murder (Charge I); conspiracy to commit premeditated murder; premeditated murder; and aggravated arson (Charge IV), in violation of Articles 80, 81, 118, and 126, UCMJ, 10 USC §§ 880, 881, 918, and 926, respectively. Appellant was sentenced to a dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. On November 18, 1993, the convening authority approved the sentence.

On April 25, 1996, over the vigorous dissent of Judge Johnston, the Court of Criminal Appeals in an unpublished opinion af-

firmed all the findings of guilty and the adjudged sentence. On September 3, 1997, this Court granted review of the following issue:[1]

> WHETHER THE COURT BELOW ERRED WHEN IT CONCLUDED THAT THE PROOF ADDUCED ON CHARGES I AND IV WAS LEGALLY SUFFICIENT.

We hold that the evidence admitted in this case was legally sufficient to permit findings of guilty beyond a reasonable doubt of the crimes of aggravated arson and attempted premeditated murder. *See generally Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 MJ 324 (CMA 1987).

The evidence in the record before us tended to show the following, *inter alia*. Appellant enlisted in the Army in February 1986, while already married. Prior to that time, and while married to Dorothy Davis, appellant began an ongoing affair with Ms. Penny Wagner. Appellant told Ms. Wagner that he intended to join the Army, divorce his wife, and then marry her. Ms. Wagner, however, began to doubt appellant when, a year later, she learned of the ensuing birth of a second child to appellant and his wife. After appellant enlisted in the Army, he and his wife had serious financial problems. During this time, appellant maintained a $100,000 life insurance policy on his homemaker wife.

On May 24, 1987, at about 0300 hours, a fire occurred in appellant's trailer home at Fort Polk, Louisiana. Appellant's wife, then 6 months' pregnant, awoke, discovered the fire that was centered in the television set in the front room, and escaped from the trailer. Neither appellant nor his daughter was present in the trailer at that time. He returned from a car ride approximately 15 to 30 minutes after the fire with their 3-year-old daughter, reacted calmly, and made no inquiry about his wife's condition.

A civilian fire inspector investigated the incident and concluded that the fire was accidentally caused by an electrical short or component failure in the television set. He dis-

1. This Court heard oral argument in this case at the United States Military Academy, West Point, New York, as part of the Court's Project Outreach. *See* 34 MJ 194, 195 n. 1.

covered during the investigation that the wires in the smoke detectors in appellant's trailer were disconnected. Appellant filed an insurance claim for the fire damage and received a $10,400 settlement. A fire inspector and insurance claims representative both testified that they had earlier concluded the fire was accidental. However, they further testified that had they been aware of other circumstances surrounding the fire, they would have viewed the situation suspiciously.

Approximately 4 years later, in March 1991, at Fort Lewis, Washington, appellant's wife died from a gunshot wound to the temple. The death was found by the Army Criminal Investigative Command to be a suicide. A year later, the case was re-opened, based upon the sworn statement of a former employee of appellant. The statement averred that appellant's wife was murdered.

Subsequently, appellant was charged with his wife's premeditated murder in 1991; conspiracy to commit murder; adultery; making a false official statement; false swearing; and fraudulent enlistment in the Army. In addition, appellant was charged with aggravated arson and attempted premeditated murder of this same wife, as a result of the 1987 fire at his trailer home in Fort Polk, Louisiana. Only the aggravated-arson and attempted-premeditated-murder charges are the subject of this appeal.

— — —

Appellant asserts that the evidence admitted at his court-martial is legally insufficient to convict him of aggravated arson and attempted premeditated murder. *See generally Jackson v. Virginia* and *United States v. Turner*, both *supra.* He contends that the appellate court below erred by making findings of fact "which are not supported by the evidence" in the record. In his own words, appellant argues "that, once the factual predicate" of his case [2] "is properly evaluated, there is no evidence to support the elements of the offenses" of aggravated arson and attempted premeditated murder. Final Brief at 5. We disagree. *See United States*

*v. White*, 45 MJ 345, 347 (1996)(general principles of legal-sufficiency analysis).

Appellant's legal-sufficiency argument can be reduced to two basic questions: what evidence was introduced in this case to show beyond a reasonable doubt that his trailer was intentionally set on fire, and what evidence was admitted to show that he did it. Appellant basically argues that all the government witnesses testified that the fire in his trailer in 1987 was an accident, and therefore, the members had no legal basis whatsoever to conclude he intentionally set this fire. *See* unpub. op. at 5–6 (Johnston, J., concurring in part and dissenting in part). We disagree with appellant's narrow view of the evidence of record in this case. *See generally United States v. Speer*, 40 MJ 230, 232 (1994) (this Court not bound by appellant's version of evidence or inferences to be drawn in conducting legal-sufficiency analysis).

We first turn to the question whether there was sufficient evidence in this case to show beyond a reasonable doubt that the fire in appellant's trailer in 1987 was intentionally set and not an accident. Both attempted murder under Articles 80 and 118, and aggravated arson under Article 126, require purposeful conduct; mere accidental conduct is not sufficient to support convictions under these statutes. *See* paras. 4c(1), 43c(1), and 52c(1), Part IV, and RCM 916(f), Manual for Courts–Martial, United States, 1984. Moreover, as noted by appellant, two of the Government's main witnesses against him, who investigated the fire in 1987, testified they then concluded the fire was accidental. Nevertheless, this was not the only evidence presented in this case on the causation of the fire, and the members were not required to accept this testimony as fact. *See United States v. Williams*, 21 MJ 360, 362 (CMA 1986).

Again, as noted above, there was no direct testimony from appellant that he intentionally started the fire in his television so that it would spread to other parts of his trailer. *See United States v. Doe (R.S.W.)*, 136 F.3d 631, 636 (9th Cir.1998). Moreover,

---

2. Appellant does not define "factual predicate," but we assume he means the evidence admitted in this case from which the members could find the facts.

there was no "parade of experts" who concluded, and explained their reasons for concluding, that someone intentionally burned appellant's trailer. *See United States v. Corona,* 108 F.3d 565, 576 (5th Cir.1997). However, neither direct evidence nor expert testimony is required for the members to find that the fire was intentionally started. *See United States v. Dubose,* 47 MJ 386, 389 (1998). Here, other evidence was admitted, circumstantial in nature, from which a rational factfinder could infer that arson occurred in his trailer in Louisiana in 1987. *See generally United States v. Utter,* 97 F.3d 509, 512 (11th Cir.1996).

Mr. Fontenot, one of the firefighters who responded to the fire call from a neighbor of appellant, testified for the prosecution in this case. He stated that he initially concluded that the fire was an accident caused by an electrical short in the television. He further testified, however, that the wires in all the smoke detectors (2) in the trailer had been disconnected, and that, if he had known about appellant's financial difficulties and Ms. Wagner's ultimatum, he would have considered the fire suspicious. Mr. Lacombe, the insurance claims officer, also testified that he would have called for further investigation if he knew the wires in the smoke detectors had been disconnected, that appellant was in financial trouble, and that he was being pressured by his paramour. A third prosecution witness, Mr. Fitz, an expert in fire causation, testified that it is "fairly rare" for a television to combust spontaneously, and that it is especially rare if a television was turned off as appellant's was. He also testified that it is easy to use a television to make arson look like an accidental fire, and he explained how it is done. There was thus some evidence that the fire in appellant's trailer was consistent with arson, not accident. *See United States v. Utter, supra* and n. 1 (experts testify to number of reasons why fire consistent with arson and inconsistent with accident).

This evidence of intentional fire ignition did not stand alone in the record of trial. In addition, it was shown that appellant had lied to various members of his command when he told them that he had been awakened from his sleep by the smoke in his trailer and had evacuated his child and wife. *See Corona,* 108 F.3d at 576. There was also ample evidence of motive in terms of his financial and extramarital relationship problems which suggests the fire was purposefully set as a solution thereto. *See Utter, supra* at 512. Finally, the prosecution called Private Jaouni, a fellow prisoner of appellant's, who testified that appellant stated that he had fooled the insurance company in Louisiana and that he covered his tracks pretty well. This evidence, *as a whole,* was a sufficient basis for a reasonable factfinder to conclude that the fire in appellant's trailer in 1987 was intentionally, not accidentally, set.

■ The second question raised in this case is what evidence was admitted that appellant was the person who intentionally set this fire? *See State v. Mlo,* 335 N.C. 353, 440 S.E.2d 98, 106 (1994). First, as noted above, the record contains ample evidence of appellant's *motive* to set fire to his trailer. It showed that he had serious financial problems and collected $10,400 from his insurance company after the fire. In addition, it showed that he had a long-term extramarital affair with Ms. Wagner, who gave him an ultimatum to end his marriage or risk losing her. Second, the record shows that he had the *opportunity* to commit the crime of arson and attempted murder of his wife. It was his trailer; his wife was sleeping in bed; and he had a 14–minute phone call with his mistress a mere 4 hours before the mysterious fire started. Third, it was shown that appellant had the *ability* to set the fire through use of the television set. Mr. Fitz provided testimony that a fire could be started in a television set and detailed the various ways it could easily be done. Evidence was also admitted that appellant was a handyman. Finally, evidence was admitted that he told his prison mate that he had fooled his insurance company in Louisiana, "covered up his tracks," and "the Government's best witnesses ... are six foot [sic] under ... and seven years gone." These implied admissions were strong evidence identifying appellant as the arsonist.

A final question in this case, although not specifically briefed by appellant, is whether his conviction for attempted premeditated murder can also be sustained on the basis of the evidence in this record. Aggravated arson under Article 126 requires only a general intent to willfully and maliciously burn or set a fire. *See United States v. Acevedo–Velez,* 17 MJ 1, 7 (CMA 1983). Attempted premeditated murder under Articles 80 and 118(a), however, requires a specific intent to commit a codal offense, here the premeditated murder of his first wife. *See United States v. Jones,* 37 MJ 459, 461 (CMA 1993); *see generally* paras. 4b(2) and 43b(1)(d) and c(2)(a), Part IV, Manual, *supra.* An obvious concern here is what evidence shows appellant had such a calculated, murderous intent at the time he set fire to the television in his trailer in May 1987?

An intent to commit premeditated murder, like any other mental state, can be shown by direct or circumstantial evidence. *See* 2 W. LaFave and A. Scott, *Substantive Criminal Law* (hereafter LaFave & Scott) § 7.7(a) at 239 (1986). In this case, there was no direct evidence in the form of a statement from appellant that he carefully considered the thought of killing his wife, decided to do so, and initiated the arson of his trailer to accomplish this end. However, there was circumstantial evidence of such an intent on his part admitted in this case which would support his conviction for attempted premeditated murder. *See generally United States v. Franklin,* 35 MJ 311, 316, 318 (CMA 1992) (pre-offense statement, "Did you ever wonder what it would be like to kill a bitch?," admitted to show intent); *United States v. Ayers,* 14 USCMA 336, 343, 34 CMR 116, 123 (1964) (pre-offense beatings of victim).

Professors LaFave and Scott in their treatise on criminal law have commented on the type of circumstantial evidence which has been found sufficient to show premeditation, as follows:

> On the basis of events before and at the time of the killing, the trier of fact will sometimes be entitled to infer that the defendant actually premeditated and deliberated his intentional killing. Three categories of evidence are important for this purpose: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, *planning activity;* (2) facts about the defendant's prior relationship and conduct with the victim from which *motive* may be inferred; and (3) facts about the *nature of the killing* from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design. Illustrative of the first category are such acts by the defendant as prior possession of the murder weapon, surreptitious approach of the victim, or *taking the prospective victim to a place where others are unlikely to intrude.* In the second category are prior threats by the defendant to do violence to the victim, *plans or desires of the defendant which would be facilitated by the death of the victim,* and prior conduct of the victim known to have angered the defendant. As to the third category, *the manner of killing,* what is required is evidence (usually based upon examination of the victim's body) showing that the wounds were deliberately placed at vital areas of the body.

LaFave and Scott, *supra,* § 7.7(a) at 239–40 (footnotes omitted; last 3 emphases added); *see also Mlo, supra* at 106 (listing seven factors showing premeditation and deliberation).

In this light, we conclude that the record does contain quite sufficient evidence of premeditation and deliberation to sustain appellant's attempted murder conviction. First, we note that the record contains evidence of "planning activity" by appellant. It was shown that the intended victim was sleeping at the time the fire was started, a situation where she would be most vulnerable to injury from the fire. *See State v. Mlo, supra.* Moreover, it was shown that appellant removed himself and his daughter from the scene of the fire, effectively targeting his victim in a conscious and reflective way. *See Territory of Guam v. Atoigue,* 508 F.2d 680,

683 (9th Cir.1974) (appellant removed clothing from residence before the killing).

Second, as noted above, there was also evidence that appellant had multiple "motive[s]" for killing his first wife. Testimony was admitted that appellant's mistress put extreme pressure on him to end his marriage with the victim in order to be with her. *See People v. Cole,* 47 Cal.2d 99, 301 P.2d 854, 859 (Cal.1956). Testimony was also admitted that his financial problems were becoming more serious and that he maintained a $100,-000 insurance policy on his homemaker wife. A reasonable juror could infer from this motive evidence that appellant cooly plotted to kill his wife as a simple answer to two pressing problems. *See United States v. Downs,* 56 F.3d 973, 976–77 (8th Cir.1995).

Finally, expert testimony was admitted concerning the methods of making arson look like an accidental fire. Evidence was also admitted showing the high probability of death by smoke inhalation from such a fire.

This "manner of killing" evidence showed a deliberate and murderous design. *Cf. People v. Anderson,* 70 Cal.2d 15, 73 Cal.Rptr. 550, 447 P.2d 942, 953 (Cal.1968).

In sum, even if this was a close case for the factfinders, as suggested by Judge Johnston's opinion below, we must reject appellant's implied invitation to reconsider the question of appellant's guilt. Viewing the evidence in the light most favorable to the Government, as we must, we conclude that a reasonable factfinder could have found all the essential elements of attempted premeditated murder and aggravated arson beyond a reasonable doubt. *See Jackson, supra* at 319, 99 S.Ct. 2781.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.