# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.R. MCFARLANE, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**DUSTIN J. CLARK**
**CORPORAL (E-4), U.S. MARINE CORPS**

**NMCCA 201300411**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 30 July 2013.
**Military Judge:** LtCol Elizabeth Harvey, USMC.
**Convening Authority:** Commanding Officer, Headquarters and Headquarters Squadron, Marine Corps Air Station, Yuma, AZ.
**Staff Judge Advocate's Recommendation:** Maj G.T. Funk, USMC.
**For Appellant:** Maj Michael Berry, USMC.
**For Appellee:** Maj David Roberts, USMC; LCDR Keith Lofland, JAGC, USN.

**24 April 2014**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a special court-martial, convicted the appellant, contrary to his pleas, of one specification of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The appellant was sentenced to 60 days' confinement, forfeiture of $500.00 pay per month for four months, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority disapproved confinement in excess of twenty-nine days, approved the

remainder of the sentence as adjudged, and, except for the bad-conduct discharge, ordered the sentence executed.

The appellant's sole assignment of error asserts that his larceny conviction was both legally and factually insufficient due to his mistaken belief that the property he took was abandoned. We disagree. After carefully considering the record of trial and the submissions of the parties, we are convinced that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

**Background**

Prior to being deployed, Sergeant R (Sgt R) arranged with Staff Sergeant H (SSgt H) to store his motorcycle in the staff sergeant's carport of his base residence. Sgt R purchased the motorcycle several months earlier for approximately $5,500.00 with a loan from a local credit union. While Sgt R was deployed, SSgt H received transfer orders, so he arranged for Sgt L to pick up the motorcycle from his carport and store it until Sgt R returned from his deployment. A week or two prior to his departure, SSgt H moved Sgt R's motorcycle from his carport to the street in front of his residence, leaving the keys to the motorcycle in the ignition. However, Sgt L never picked up the motorcycle and it remained in the front of SSgt H's vacated residence after he transferred.

The appellant, a military police officer, first noticed the motorcycle in front of SSgt H's residence while patrolling on base after a neighboring resident pointed it out and commented that it was taking up a parking space. This resident, who was also a friend of the appellant's, suggested that the appellant have the motorcycle towed away. At trial the appellant claimed that he took her suggestion as a joke, because, at the time, he thought that SSgt H's residence was still occupied. A self-proclaimed "motorcycle enthusiast," the appellant owned a motorcycle that was "nearly identical" to the one parked in the street. The appellant thought this motorcycle, a 2007 Suzuki GSXR 600, could be used as a "parts bike" for his own motorcycle. A few days later, around midnight, the appellant loaded the motorcycle onto a trailer and drove it to a rented storage area on base. Once there, he covered it with a motorcycle cover. He told no one that he had this motorcycle in his storage area.

2

Approximately two to three days after SSgt H transferred, Sgt L attempted to retrieve the motorcycle, but it was gone. Sgt L reported this to his supervisor who advised him "that somebody else probably had already picked it up and moved it for [Sgt R]." Record at 62. Sgt L took no further action. Once Sgt R returned from deployment, however, he immediately began inquiring about his missing motorcycle and reported it stolen to the Criminal Investigation Division (CID) at the Provost Marshall's Office. CID conducted an investigation into the missing motorcycle and eventually located it in the appellant's rented storage lot aboard base.

When CID interviewed the appellant, he at first denied any knowledge of the motorcycle and he could not explain its presence in his storage lot.[1] The appellant later admitted in a sworn statement to CID that after examining the motorcycle while it was parked on the street he "got the idea that it was abandoned and [he] got the idea that [he] could benefit from it."[2] In the same statement, he further admitted that he stole the motorcycle, because, "[I]t was an open opportunity."[3] During a permissive search of the appellant's barracks room, he gave investigators the keys to Sgt R's motorcycle.

**Summary of Evidence at Trial**

At trial, the appellant testified in his own defense. He claimed that when he first examined the motorcycle, he saw that it was dirty, with spider webs and bird droppings on it. He also testified that the motorcycle lacked any visible signs of being registered or licensed, and the key was left in the ignition.

He later admitted that after cleaning the motorcycle, he noticed a VIN number, but did not attempt to check the number with base or local law enforcement to locate the owner. He further testified that he planned on applying for an "abandoned title"[4] soon after he took the motorcycle into his possession, but later conceded that he failed to do so in the three months

---

[1] Prosecution Exhibit 7 (DVD of the appellant's videotaped interview with CID).

[2] PE 8 at 1.

[3] *Id*. at 3.

[4] Record at 152. The appellant described in detail the necessary steps to obtain an abandoned title in Arizona.

that he kept the vehicle in storage.  He also conceded that he told no one else about having taken the motorcycle, made no effort to utilize certain law enforcement databases he knew were available to locate the owner, and he never tried to call the number on the key in an attempt to identify the owner.

## Legal and Factual Sufficiency

The appellant claims that his conviction for larceny is legally and factually insufficient because he mistakenly believed that the property he took was abandoned,[5] thus negating the specific intent required for the offense.  After review of the record, we find the evidence both legally and factually sufficient to sustain a conviction for larceny.

In accordance with Article 66(c), UCMJ, this court reviews questions of legal and factual sufficiency *de novo*.  *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002).  The test is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."  *United States v. Dobson*, 63 M.J. 1, 21 (C.A.A.F. 2006) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  When testing for legal sufficiency, this court must draw every reasonable inference from the record in favor of the prosecution.  *United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993); *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991).  The test for factual sufficiency "is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are]convinced of the accused's guilt beyond a reasonable doubt."  *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).  However, reasonable doubt does not mean that the evidence must be free from conflict.  *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007).  Specific intent may be established by circumstantial evidence.  *United States v. Davis*, 49 M.J. 79, 83 (C.A.A.F. 1998).

Where mistake-of-fact is at issue in a larceny offense, the prosecution has the burden of proving beyond a reasonable doubt that the defense does not exist.  RULE FOR COURTS-MARTIAL 916(b)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  Here, the appellant claims that the Government's circumstantial evidence failed to sufficiently counter the appellant's evidence showing

---

[5] Abandoned property cannot be the subject of a larceny, since larceny is a specific intent offense.  *United States v. Malone*, 14 M.J. 563, 564 (N.M.C.M.R. 1982).

that he held an honest belief that the motorcycle had been abandoned.

Notwithstanding the motorcycle's appearance and lack of registration, other facts developed at trial contradict the appellant's claim. First, the motorcycle was found in base housing. Second, the appellant took the motorcycle at night and told no one about his fortuitous discovery. Third, when CID discovered the motorcycle, the appellant could not explain how the motorcycle ended up in his storage lot.[6] Last, despite ample information to locate the owner, such as the VIN to the motorcycle and a phone number on the key left in the ignition, he took no action to locate the owner of the motorcycle. Thus, we conclude that the appellant did not look for an owner, because he did not want to find an owner. Any ignorance this appellant may have had as to whether the motorcycle was abandoned was through deliberate avoidance rather than by an honest mistake. *United States v. McDonald*, 57 M.J. 18, 22 (C.A.A.F. 2002). *Cf. United States v. Adams*, 63 M.J. 223, 223 (C.A.A.F. 2006).

Considering the evidence in a light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found all the elements of larceny, to include the requisite specific intent, beyond a reasonable doubt. *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008). Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

---

[6] PE 7 (CD of Interrogation) at 0545000.

5

**Conclusion**

The findings and sentence as approved by the convening authority are affirmed.

For the Court

R.H. TROIDL
Clerk of Court