# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40648**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Alejandro E. GRAY**
**Airman First Class (E-3), U.S. Air Force, *Appellant***

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 24 March 2025

———————————

*Military Judge*: Matthew N. McCall.

*Sentence*: Sentence adjudged on 19 April 2023 by GCM convened at Seymour Johnson Air Force Base, North Carolina. Sentence entered by military judge on 15 May 2023: reduction to E-2 and forfeiture of $1,000.00 pay per month for 1 month.

*For Appellant*: Captain Joyclin N. Webster, USAF.

*For Appellee*: Colonel Zachary T. Eytalis, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Regina Henenlotter, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and WARREN, *Appellate Military Judges*.

Senior Judge ANNEXSTAD delivered the opinion of the court, in which Judge DOUGLAS and Judge WARREN joined.

———————————

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

ANNEXSTAD, Senior Judge:

A general court-martial consisting of a military judge convicted Appellant, contrary to his pleas, of one specification of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[2],[3] The military judge sentenced Appellant to be reduced to the grade of E-2 and to forfeit $1,000.00 pay per month for one month. The convening authority took no action on the findings or sentence.

On 21 January 2025, Appellant raised three issues on appeal which we have rephrased: (1) whether Appellant's convictions are legally and factually sufficient, (2) whether Appellant's sentence is inappropriately severe, and (3) whether Appellant was subjected to unreasonable post-trial delay.

As to issue (2) we have carefully reviewed Appellant's sentence and specifically considered "the particular appellant, the nature and seriousness of the offense[ ], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk,* 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). We also recognize that although we have discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted). We find Appellant's sentence was not inappropriately severe, and that Appellant is not entitled to sentence relief. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1).

We now turn our attention to Appellant's remaining issues. Finding no error that materially prejudiced Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

In March 2021, MM reported to Seymour Johnson Air Force Base, North Carolina, for her first active-duty assignment. Shortly after her arrival she met

---

[2] Unless otherwise noted, all references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant was acquitted of one specification of dereliction of duty, and two specifications of sexual assault in violation of Articles 92 and 120, UCMJ, 10 U.S.C. §§ 892, 920.

Appellant, who showed her around the squadron and would on occasion provide her rides to work. MM had little interaction with Appellant outside of work, and if she did it was with other people present.

On 20 May 2021, MM, Appellant, and two other Airmen were tasked with painting interior spaces of a building near the flight line. Appellant gave MM a ride to work on this morning. As part of that tasking, they were instructed to wear civilian attire that they "did not mind getting paint on." Pursuant to the instructions MM was wearing jeans, a tank top and "ugly shoes."

According to MM's testimony, after they finished some of the painting, the group took a lunch break. MM stated that she stayed in the room during the break and was sitting in a rolling desk chair at the end of the room and was looking at her phone. The two other Airmen left the room during the break. MM then explained, "[Appellant] walks up behind me, and pulls on my bra strap and releases it, and I feel a sharp sting, and I turn around to make eye contact with [Appellant], who says nothing." Her reaction was, "[I was] just shocked I say nothing, and he just smiles, and walks away after that interaction." She further explained feeling "[t]he stinging of the bra strap being slapped on [her] back." She could not recall if the snap left a mark on her back. In response to questions from trial counsel regarding her attire, MM stated that the straps of her bra were a little thicker than "spaghetti straps" and that the shoulder straps of her tank top were "a little thicker" than her bra straps. Shortly thereafter MM reported this incident to her co-worker, BW, to her supervisor, EK, and later that day reported the incident to security forces. During cross-examination at trial, the Defense sought to suggest that MM might have fabricated her allegation in response to criticism that same day by her supervisor, EK, that MM needed to dress more modestly in relation to her choice in tank tops for that day.

Ultimately, MM stated that after the incident she ended up catching a ride back to her dormitory with another Airman because she did not feel comfortable around Appellant.

The Defense presented testimony from Airman First Class (A1C) AD. A1C AD testified that he worked with Appellant while he was stationed in North Carolina and described Appellant as "socially awkward" and that his interactions with others were usually "brief."

The military judge convicted Appellant of assault consummated by a battery.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

In his appeal, Appellant challenges the legal and factual sufficiency of his conviction. Appellant argues that the Government's evidence was legally insufficient because MM did not see anyone pull her bra strap, nor did she ever feel Appellant make physical contact with her body. Furthermore, Appellant argues that his conviction is factually insufficient because MM's testimony was a "guess" about what happened and contrary to other witness testimony. We disagree with Appellant's arguments and find his conviction both legally and factually sufficient.

#### 1. Law

We review issues of legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). We review for factual sufficiency when an appellant asserts an assignment of error and shows a specific deficiency in proof. *United States v. Harvey*, ___ M.J.___, No. 23-0239, 2024 CAAF LEXIS 502, at *5 (C.A.A.F. 6 Sep. 2024) (citing Article 66(d)(1)(B)(i), UCMJ, 10 U.S.C. § 866(d)(1)(B)(i) (*Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*))). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). "This deferential standard impinges upon the factfinder's discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *United States v. Mendoza*, ___ M.J.___, No. 23-0210, 2024 CAAF LEXIS 590, at *9 (C.A.A.F. 7 Oct. 2024) (internal quotation marks and citation omitted).

The National Defense Authorization Act for Fiscal Year 2021 significantly changed how Courts of Criminal Appeals (CCAs) conduct factual sufficiency reviews. Pub. L. No. 116-283, § 542(b)(1)(B), (c), 134 Stat. 3388, 3611–12 (1 Jan. 2021). Previously, the test for factual sufficiency required the court, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, to be convinced of the appellant's

guilt beyond a reasonable doubt before it could affirm a finding. *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). "In conducting this unique appellate role, we [took] 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (second alteration in original) (quoting *Washington*, 57 M.J. at 399).

The current version of Article 66(d)(1)(B), UCMJ, FACTUAL SUFFICIENCY REVIEW, states:

> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.
>
> (ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—
>
> (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and
>
> (II) appropriate deference to findings of fact entered into the record by the military judge.
>
> (iii) If, as a result of the review conducted under clause (ii), *the Court is clearly convinced that the finding of guilty was against the weight of the evidence*, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B) (2024 *MCM*) (emphasis added).

"[T]he requirement of 'appropriate deference' when a CCA 'weigh[s] the evidence and determine[s] controverted questions of fact' . . . depend[s] on the nature of the evidence at issue." *Harvey*, 2024 CAAF LEXIS 502, at *8 (second and third alterations in original). It is within this court's discretion to determine what level of deference is appropriate. *Id.*

"[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* at *10 (internal quotation marks omitted).

In order for this court "to be 'clearly convinced that the finding of guilty was against the weight of the evidence,' two requirements must be met." *Id.* at *12. First, we must decide that evidence, as we weighed it, "does not prove that the

appellant is guilty beyond a reasonable doubt." *Id*. Second, we "must be clearly convinced of the correctness of this decision." *Id.*

As a general matter, "the factfinder at the trial level is always in the best position to determine the credibility of a witness." *United States v. Peterson*, 48 M.J. 81, 83 (C.A.A.F. 1998).

Corroboration of a witness's testimony is not required for legal sufficiency. *See United States v. Rodriguez-Rivera*, 63 M.J. 372, 383 (C.A.A.F. 2006) ("The testimony of only one witness may be enough . . . so long as the members find that the witness's testimony is relevant and is sufficiently credible.").

To convict Appellant of assault consummated by a battery, the Government was required to prove the following elements beyond a reasonable doubt: (1) that the accused did bodily harm to a certain person; (2) that the bodily harm was done unlawfully; and (3) that the bodily harm was done with force or violence. *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt IV, ¶ 77.b.(2).

"Bodily harm" means an offensive touching of another, however slight. *MCM,* pt. IV, ¶ 77.c.(1)(a).

**2. Analysis**

We find the Government presented convincing evidence of Appellant's guilt beyond a reasonable doubt. As our superior court has stated, "[D]irect evidence of a crime or its elements is not required for a finding of guilty; circumstantial evidence may suffice." *United States v. Hart*, 25 M.J. 143, 147 (C.M.A. 1987) (affirming conviction based on circumstantial evidence); *see also United States v. Davis*, 49 M.J. 79, 83 (C.A.A.F. 1998) (finding sufficient evidence of premeditation based on circumstantial evidence of intent). Here MM's testimony specifically described how Appellant walked up behind her and snapped her bra strap on her back without her permission. MM also stated that she immediately turned around after she felt the snap and saw Appellant standing behind her. She also testified that Appellant was the only other person in the room with her and that Appellant just "smiled" at her and then "walked away." Furthermore, her testimony established that Appellant snapped MM's bra strap on her back with enough force to "sting" her back. The credibility of her allegation was also bolstered by her immediate reporting of it to her co-worker, supervisor, and law enforcement. Moreover, that credibility was never seriously challenged by the Defense at trial. The putative motive to fabricate here was weak: *i.e.*, MM would fabricate this allegation out of whole cloth after a low-threat, innocuous conversation with her supervisor about the advisability of wearing a more modest tank top in the workplace. Nor were there any signifi-

cant prior inconsistent statements highlighted, nor any character for untruth-fulness entered. While the burden of proof lay solely with the Government, and Appellant certainly had no obligation to present any evidence to this effect at trial, the absence of any significant basis to question MM's credibility strongly weighs in favor of our conclusion on appeal that her testimony was credible and convincing.

In conclusion, we find that viewing the evidence in the light most favorable to the Prosecution demonstrates that a rational trier of fact could have found the essential elements of the offense of assault consummated by a battery upon MM beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297−98. As to the factual sufficiency of these offenses, we assume without deciding that Appellant properly made a request for a factual sufficiency review by asserting a specific showing of a deficiency of proof as required under Article 66(d)(1)(B)(i), UCMJ (2024 *MCM*), *supra.* However, having given appropriate deference to the fact that the military judge saw and heard the witnesses and other evidence, the court is not clearly convinced that Appellant's conviction was against the weight of the evidence. Therefore, the conviction is factually sufficient as well.

## B. Post-Trial Processing Delay

Appellant contends that he is entitled to sentence relief because he was subjected to unreasonable post-trial delay. Specifically, Appellant contends that he is entitled to relief because the Government took 293 days from the date this court docketed his case to when the Government produced a verbatim transcript and delivered a completed record of trial to the court. We find that Appellant suffered no prejudice and therefore no relief is warranted.

### 1. Additional Background

Appellant was sentenced on 19 April 2023. At that time, Appellant's sentence did not meet the jurisdictional requirements for automatic appeal to this court. On 23 December 2022, Congress amended Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869.[4] As amended, Article 66(b)(1)(A), UCMJ (2024 *MCM*), expanded the service Courts of Criminal Appeals' jurisdiction to any judgment of a special or general court-martial, irrespective of sentence, that included a

---

[4] National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 544, 136 Stat. 2395, 2582–84 (23 Dec. 2022).

finding of guilty. As a result, on 22 August 2023, the Government notified Appellant of his right to direct appeal to this court.[5] On 13 September 2023, Appellant timely filed notice of direct appeal with this court. On 4 October 2023, Appellant's case was docketed, and this court ordered the Government to "forward a copy of the record of trial to the court forthwith."

On 5 February 2024, this court ordered the Government to "inform the court in writing not later than 29 February 2024 of the status of [Appellant's] case with regard to this court's 4 October 2023 order." On 29 February 2024 the Government notified the court that "days one through three of trial have been transcribed," and "[t]he court reporter anticipates that the transcription will be completed by 13 March 2024." The court reporter eventually certified the transcript on 5 April 2024. On 16 April 2024, the transcript was forwarded to military justice personnel at Joint Base Andrews, Maryland, for delivery to the court. On 25 June 2024 this court issued a second order notifying the parties that the transcript had not been received. On 23 July 2024, the 399-page transcript and the complete record of trial was received by this court.

Appellant submitted his assignments of error brief on 21 January 2025. On 20 February 2025 the Government submitted its answer to Appellant's assignments of error. On 27 February 2025, Appellant replied to the Government's answer.

### 2. Law

We review the question of whether an appellant's due process rights are violated because of post-trial delay de novo. *United States v. Livak*, 80 M.J. 631, 632 (A.F. Ct. Crim. App. 2020).

In *United States v. Moreno,* the United States Court of Appeals for the Armed Forces identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. 63 M.J. 129, 136 (C.A.A.F. 2006). Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the CCA within 30 days of the convening authority's action, or (3) the CCA did not render a decision within 18 months of docketing. *Id.* at 142.

In *Livak,* this court recognized that "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules." 80 M.J. at

---

[5] The notification letter by the Government is dated 21 August 2023, but according to the documents in the record of trial, the notification letter was mailed to Appellant via certified mail the next day, 22 August 2023.

633. In acknowledgment of this fact, this court established an aggregated sentence-to-docketing 150-day threshold for facially unreasonable delay in cases that were referred to trial on or after 1 January 2019. *Id.*

Where there is a facially unreasonable delay, we examine the four factors set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno,* 63 M.J. at 135 (citations omitted). In *Barker*, the Supreme Court also identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id*. at 138–39 (citations omitted). "Of those, the most serious is the last [type], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Additionally, where an appellant has not shown prejudice from the delay, we cannot find a due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

"In the absence of a due process violation, this court considers whether relief for excessive post-trial delay is warranted consistent with this court's authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d)." *Livak*, 80 M.J. at 632; *see also United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *United States v. Gay,* 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

### 3. Analysis

Appellant argues that "the stark length of delay in his case, coupled with the necessity of two orders from the Court, demonstrates a lack of reasonable diligence," even though, according to Appellant, "there is no rigid deadline for transcript production for direct appeals like [with his case]."

We begin our analysis by acknowledging that neither *Livak* nor *Moreno* are directly applicable to Appellant's case from sentencing to docketing with this court, as these cases considered post-trial processing delays for appeals filed before Congress amended Articles 66 and 69, UCMJ. Therefore, we do not find a facially unreasonable delay in Appellant's case under the thresholds established in *Livak* or *Moreno*. That said, we do believe it is possible that an appellant could demonstrate a case-specific facially unreasonable delay outside

of *Livak and Moreno* that would trigger a *Barker* due process analysis. However, in this case, even if we assumed a facially unreasonable post-trial delay, Appellant would not be entitled to relief for a due process violation because we do not find Appellant suffered any prejudice and the delay was not so egregious as to adversely affect public perception of the fairness and integrity of the military justice system.

As to the first type of prejudice, we find that Appellant was not subject to oppressive incarceration because he was never incarcerated as a result of his conviction. As to the second type, we note that Appellant has not alleged particularized anxiety or impairment. Finally, as to the third type of prejudice, we find any delay in this case did not harm Appellant's ability to present an appeal.

After considering the four *Barker* factors we conclude that no due process violation occurred, and no relief is warranted. We do not find the delay in Appellant's case so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. Finally, recognizing our authority under Article 66(d), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See Tardif*, 57 M.J. at 225. After considering the factors enumerated in *Gay*, 74 M.J. at 744, we conclude it is not.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court