# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLOR, POND, and STEELE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class ADAM N. LOWE**
**United States Army, Appellant**

ARMY 20230600

Headquarters, Joint Readiness Training Center and Fort Polk[1]
Michael C. Friess, Military Judge (arraignment)
Maureen A. Kohn, Military Judge (motions)
Javier E. Rivera Rosario, Military Judge (trial)
Colonel Travis W. Elms, Staff Judge Advocate

For Appellant: Lieutenant Colonel Autumn R. Porter, JA; Major Robert W. Rodriguez, JA; Captain Robert W. Duffie, JA (on brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Vy T. Nguyen, JA; Major Joseph H. Lam, JA (on brief).

6 February 2026

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLOR, Chief Judge:

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of one specification of failure to obey a lawful general regulation, one specification of willfully disobeying a superior commissioned officer, and one specification of drunk or impaired operation of a vehicle, in violation of Articles 90, 92, and 113, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 892, 913 [UCMJ]. An enlisted panel, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of possession of child

---

[1] While the charge sheet and the record reflect Fort Johnson, the installation has since been renamed Fort Polk, effective 11 June 2025. *See* Dep't of the Army General Order 2025-17, 11 June 2025.

pornography and two specifications of distribution of child pornography, all in violation of Article 134, UCMJ, 10 U.S.C. § 934.[2]

Appellant raises one assignment of error, whether his convictions for distribution of child pornography are legally and factually sufficient.[3] We find a sufficient basis in law and fact to support the convictions and therefore affirm.

## BACKGROUND

Appellant lived on Fort Polk, Louisiana with his wife and two children. The Federal Bureau of Investigation (FBI), while monitoring the sharing of child sexual exploitation material through online networks, identified an Internet Protocol (IP) address registered to appellant at his address on Fort Polk. Over the span of four months, from 11 November 2022 until 26 February 2023,[4] the FBI, along with at least three other law enforcement agencies conducting similar operations,[5] downloaded the twelve charged images, eighteen charged videos, and numerous other images or videos of child pornography from appellant's IP address using the file sharing platform BitTorrent. Although these law enforcement agencies could not determine what actual devices were being used to share the child pornography through this IP address, they could determine the files were sent through BitTorrent using applications called LibTorrent and LibreTorrent.

Once the FBI turned the investigation over to Army Criminal Investigation Division (CID), CID special agents developed a plan to seize appellant's electronic

---

[2] Because the possession specification was a lesser included offense of distribution, the military judge granted the government motion to conditionally dismiss Specification 1 of Charge I (Possession of Child Pornography) conditioned on Specifications 2 and 3 of Charge I (Distribution of Child Pornography) surviving appellate review.

[3] We have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they merit neither discussion nor relief.

[4] The government only charged distribution offenses that occurred on 11 and 12 November 2022. The other distributions were admitted under Military Rule of Evidence [Mil. R. Evid.] 404(b) for the non-character purpose to show knowledge of the contraband and to negate the possibility the child pornography was downloaded by accident or mistake.

[5] These other law enforcement agencies included Chesapeake Police Department in Chesapeake, Virginia, Caddo Parrish Sherriff's Office in Shreveport, Louisiana, and Morgan City Police Department in Morgan City, Louisiana.

2

devices before they could be tampered with. After receiving a warrant to search the home, CID implemented their plan. One morning, after appellant left for work and his wife left the residence, CID executed the search warrant. Simultaneously, CID detained appellant at his unit and stopped his wife at the gate as she re-entered Fort Polk. The entry into the home did not go exactly as planned. The privatized housing office gave CID the incorrect key, so they had to breach the door to the home. Appellant's dog fled into the neighborhood. This created a scene in the neighborhood as the agents retrieved the dog and placed it into the backyard of the home.

In searching appellant's home, CID seized thirty-two different electronic devices. However, they did not seize the Wi-Fi router that had been assigned the IP address from which law enforcement downloaded the child pornography. During this search, the agents located two firearms that had not been registered on base.[6] No child pornography was found on any of the thirty-two different electronic devices seized from the home. However, several Computer-Generated Imagery (CGI) Child Sexual Abuse Material (CSAM) video games were located on appellant's OneDrive account, on a hard drive owned by appellant, and at least one on his cell phone.[7]

Four days after the search, appellant left his cell phone in his home so he could not be reached, drove off base, consumed a large number of pills,[8] and drank alcohol[9] in violation of his commander's orders.[10] He also slashed his wrist and his

---

[6] This formed the basis for the Article 92, Failure to Obey a Lawful General Regulation, offense. The lawful general regulation at issue is Joint Readiness Training Center and Fort Polk Regulation 190-3, 12 June 2012.

[7] These CGI CSAM video games were not charged, but admitted under Military Rule of Evidence (M.R.E.) 404(b) for the non-character purpose to show motive and intent to possess and view this type of contraband, to show identity—that it was appellant that possessed and distributed the contraband, and to show knowledge and negate the possibility the child pornography was downloaded by accident or mistake.

[8] These pills consisted of gabapentin neurontin and bupropion. During the providence inquiry, appellant stated that he consumed "about 90 different pills."
[9] According to the trial testimony, appellant had consumed 75% of a "gallon quart size" bottle of Kraken. The driving after consuming alcohol formed the basis for the Article 113, Drunk or Impaired Operation of a Vehicle, offense.

[10] Appellant's company commander had ordered appellant to not consume alcohol and to conduct safety check-ins outside of normal duty hours as determined by his

(continued . . .)

upper thighs with a knife. He ultimately crashed into a canal approximately ninety miles from Fort Polk. The local law enforcement officer that arrived on the scene thought appellant might be deceased and was surprised when he started talking and moving. The law enforcement officer had to apply bandages to appellant to be sure he would not "bleed out" from his injuries.

As the law enforcement officer administered aid to appellant and removed him from the vehicle, appellant told the officer that he was "accused of accessing child pornography and his life was ruined." After a short stay in a mental health facility, appellant was placed in pretrial confinement.

The military judge sentenced appellant to a dishonorable discharge, confinement for 54 months, and reduction to the grade of E-1.[11]

## LAW AND DISCUSSION

### A. Legal and Factual Sufficiency

This court may consider whether a guilty finding is factually sufficient "upon request of the accused if the accused makes a specific showing of a deficiency in proof." UCMJ art. 66(d)(1)(B)(i). Once these conditions are met, the court "may weigh the evidence and determine controverted questions of fact," subject to "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence" and "appropriate deference to findings of fact entered into the record by the military judge." UCMJ art. 66(d)(1)(B)(ii), (I)-(II). If the court is "clearly convinced that the finding of guilty was against the weight of the evidence," the court "must decide that the evidence, *as the [court] has weighed it*, does not prove that the appellant is guilty beyond a reasonable doubt. Second, the [court] must be clearly convinced of the correctness of this decision." *United States v.*

---

(. . . continued)
supervisor. This formed the basis for the Article 90, Willful Disobeying a Superior Commissioned Officer, offense.

[11] The military judge sentenced appellant to fifty-four months each for the two specifications of distribution of child pornography and zero months each for drunk or impaired operation of a vehicle, failure to obey a lawful general regulation, and willfully disobeying a superior commissioned officer. All sentences were to run concurrently. Appellant was credited with 275 days of confinement credit. Specifically, 235 days of that credit were for pretrial confinement and 40 days of that credit were judicially ordered for Article 13 violations. The convening authority granted a deferment of reduction in grade, along with deferment and waiver of automatic forfeitures for the benefit of accused's family.

*Harvey*, 85 M.J. 127, 132 (C.A.A.F. 2024) (internal quotations omitted) (emphasis in original).

This court reviews issues of legal sufficiency de novo. *United States v. Robinson*, 77 M.J. 294, 297 (C.A.A.F. 2018) (internal citation and quotation marks omitted). Evidence is legally sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 297-98. Because we must draw "every reasonable inference from the evidence of record in favor of the prosecution," the standard for legal sufficiency "involves a very low threshold to sustain a conviction." *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (quoting *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)) (internal quotation marks omitted); *Robinson*, 77 M.J. at 297-98. Further, this Court's assessment for both legal and factual sufficiency "is limited to the evidence presented at trial." *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

To convict appellant of distribution of child pornography, as charged in this case, the government was required to prove beyond a reasonable doubt: 1) that appellant knowingly and wrongfully distributed child pornography to another; and 2) that, under the circumstances, the conduct of appellant was of a nature to bring discredit upon the armed forces.[12] Article 134, UCMJ. Distributing means "delivering to the actual or constructive possession of another." *Manual for Courts-Martial*, pt. IV, ¶95.c.6 [*MCM*]. Possessing means "exercising control of something. Possession may be direct physical custody like holding an item in one's hand, or it may be constructive, as in the case of a person who hides something in a locker or a car to which that person may return to retrieve it. Possession must be knowing and conscious. Possession inherently includes the power or authority to preclude control by others." *MCM*, pt. IV, ¶95.c.8.

Circumstantial evidence is "evidence which tends directly to prove not a fact in issue but some other fact or circumstance from which, either alone or together with other facts or circumstances, one may reasonably infer the existence or non-existence of a fact in issue." R.C.M. 918(c), discussion.[13] "Findings may be based on direct or circumstantial evidence." R.C.M. 918(c). "[T]he government is free to meet its burden of proof with circumstantial evidence." *United States v. King*, 78

---

[12] The government only charged service discrediting conduct in this case, not prejudicial to good order and discipline.

[13] The benchbook uses a slightly different version: circumstantial evidence is "evidence that tends to prove some other fact from which, either alone or together with some other facts or circumstances, you may reasonably infer the existence or nonexistence of a fact in issue." Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 7-3 (29 Feb. 2020) [Benchbook].

M.J. 218, 221 (C.A.A.F. 2019) (viewing child pornography case); *see also United States v. Davis*, 49 M.J. 79 (C.A.A.F. 1998) (finding circumstantial evidence can be sufficient to establish intent for attempted premeditated murder).

*B. Legal and Factual Sufficiency - Where is the Child Pornography?*

At trial, appellant stipulated that the images the FBI downloaded constituted child pornography and did not contest that the IP address used was registered to appellant. The defense's opening statement began, "They're [the trial counsel] correct, there is no dispute that the child pornography was downloaded through that IP address. There's not. And as the government said, it's about who did it." In other words, the defense focused on identity of the perpetrator and that it was not appellant that committed the crime.

On appeal, appellant raises a specific showing of a deficiency in proof where the evidence showed that none of the thirty-two devices seized from his home contained child pornography. In fact, the experts testified that none of the thirty-two devices ever contained child pornography, either in files accessible to the user or in unallocated space, where law enforcement will often find remnants of deleted files. Appellant's argument therefore centers on whether the government met its burden to show appellant distributed child pornography when the government provided no evidence of the storage medium from which the distribution came and, consequently, no evidence that the child pornography was ever under appellant's dominion or control.

Appellant relies on *United States v. Navrestad*, 66 M.J. 262 (C.A.A.F. 2008). In that case, our superior court held that the sending of a hyperlink to a Yahoo! briefcase containing child pornography did not demonstrate sufficient dominion and control over the files therein to sustain a conviction for possession of child pornography. In this case, appellant claims that *Navrestad* requires proof of possession to prove distribution. And since the government never found child pornography on any of the thirty-two devices seized from appellant's home, appellant argues the government could not have proven distribution of child pornography.

However, this argument fails for several reasons. In *Navrestad*, the analysis turned on the nature of a hyperlink, which the court determined provided access to data but neither moved files or documents from one location to another nor was child pornography itself. In contrast, appellant was not charged with distributing a hyperlink, he was charged with distributing actual images and videos of child pornography. Moreover, as reflected by the evidence presented in appellant's trial, in order for child pornography to be shared through BitTorrent, the files would have had to exist, at some point, on an electronic device or in another location the user had dominion and control over—such as cloud storage.

While the evidence of possession was circumstantial, we are nonetheless convinced of appellant's guilt beyond a reasonable doubt. It is undisputed images and videos were shared through appellant's Wi-Fi router's IP address. Appellant stipulated that the images and videos downloaded by law enforcement from his IP address on the dates of the charged offenses were child pornography. These stipulations sufficiently described the child pornography and that the images and videos violated Article 134, UCMJ. To share these images and videos through appellant's IP address using BitTorrent, a user would need access both to the Wi-Fi router and the child pornography. Based on the evidence presented at trial, the government proved beyond a reasonable doubt that appellant was that user. In coming to this conclusion, we rely on the following non-exhaustive list of circumstantial evidence presented at trial:

### 1. Access to IP Address

The IP address used to distribute the child pornography was registered to appellant's Wi-Fi router, which was located in his home. The Wi-Fi router required a password, the password was saved in appellant's phone, and the only person to use the Wi-Fi router during the entire four-month timespan during which law enforcement was downloading child pornography was appellant. Alternatively, the only other members of appellant's household who may have had access to the Wi-Fi router during the entirety of this time period were appellant's wife and his two daughters—ten and six years old, respectively.[14] While appellant's wife indicated to law enforcement—approximately a week before appellant's court-martial—that the password to appellant's Wi-Fi router was shared with a neighbor, the identified neighbor moved out one month before law enforcement downloaded additional child pornography from appellant's IP address in February 2023.

### 2. Appellant's Technical Knowledge

Appellant possessed advanced technical knowledge and employed sophisticated security measures. He was a proficient user of the peer-to-peer file sharing platform BitTorrent and utilized password protected file storage locations to save data, including in virtual "cloud" locations, such as OneDrive, and on his computer, cell phone, and numerous portable storage drives. There was also evidence that he used an end-to-end encrypted, cloud-based, storage account operated by a foreign-based company that was not required to respond to United States search warrants. Appellant also obtained and possessed vast amounts of data, as evinced by three separate notifications from Microsoft during a three-month period that a large number of files had been deleted from appellant's OneDrive cloud

---

[14] Appellant's 15-year-old son visited from Oklahoma for one week during the four months that law enforcement downloaded files from appellant's IP address. His 18-year-old son did not visit from Oklahoma during this window.

storage location. During this same period, he also changed his password to this One Drive account at least once. Finally, appellant possessed several files containing computer programming resources, including manuals and instructional books.

### 3. Additional Distributions of Child Pornography

In addition to the charged offenses, confirmed child pornography was distributed though appellant's IP address to law enforcement agencies on at least four other occasions—once on the same date as charged offenses, in November 2022, twice on separate dates in December 2022, and once on an additional date in February 2023. The uncharged downloads were introduced under Mil. R. Evid. 404(b) to show motive and intent to possess and distribute child pornography, to show identity—that it was appellant that possessed and distributed the contraband— and to negate the possibility that the files were downloaded by accident or mistake.

### 4. Method of Distribution

The charged and uncharged distributions of child pornography occurred through BitTorrent. To obtain access to the BitTorrent network, a user must affirmatively download and install BitTorrent compatible software. And for files to be shared, both the sender and receiver must utilize such software. The specific software an individual may use to access BitTorrent is dependent on the type of device and operating system of that device. Forensic evidence presented at trial established that appellant was a BitTorrent user and downloaded numerous files from the network, including videos and movies. Appellant had access to the BitTorrent platform on his cellphone through LibreTorrent, a BitTorrent compatible cellphone application. Appellant downloaded and installed the LibreTorrent application on his phone in late November 2022. The three uncharged distributions of child pornography that occurred in December 2022 and January 2023 were transmitted through appellant's Wi-Fi router and were sent using the LibreTorrent software.

### 5. Appellant Possessed Video Games of CGI CSAM

Appellant possessed CGI CSAM video games on his phone, his OneDrive account, and a hard drive. All of the games included graphic images of child-aged cartoons engaging in sexual activities. One of these CGI CSAM video games allowed the user to place himself in the shoes of a man that reverts to childhood and has sexual intercourse with adult women. Another of these video games allowed the user to play the role of a father visited by his underage daughter for the holidays, where they engage in sexual intercourse. Finally, another game allowed the user to play the role of a father of two underage girls, and he engages in sexual intercourse with them. Importantly, appellant possessed these CGI CSAM video games for a significant period prior to the charged offenses—as the files were created on a hard

drive in June 2022. The game on his phone could be accessed with one-click, similar to any other application loaded on a cell phone. These video games were introduced under Mil. R. Evid. 404(b) to show motive and intent to possess the CSAM, to show identity—that it was appellant that possessed and distributed the contraband—and to show knowledge and negate the possibility that the files were downloaded by accident or mistake.

### 6. Digital Media Was Not Limited to the House

Agents searched appellant's home, but his home and the devices located at his home on that date were not the only locations he could have stored and saved child pornography.[15] Law enforcement was only able to serve warrants on four of the five known cloud services used by appellant. The fifth was based in Canada, used encryption end-to-end, and was not subject to United States jurisdiction or service of process. Thus, it is a reasonable inference that appellant stored child pornography on other devices or by utilizing this fifth cloud service.

### 7. Consciousness of Guilt

Appellant attempted suicide by consuming pills and alcohol and then driving his car into a ditch—after slashing his legs and wrists with a knife. When rescued, he made the statement that he was "accused of accessing child pornography and his life was ruined." These facts were introduced under Mil. R. Evid. 404(b) to show consciousness of guilt.

Giving appropriate deference to the trial court and its findings, and based on the circumstantial evidence described above, we are convinced that the government proved beyond a reasonable doubt that appellant knowingly and wrongfully distributed child pornography to another and that, under the circumstances, the conduct was of a nature to bring discredit upon the armed forces. Because we find the evidence to be factually sufficient, we also find the evidence legally sufficient for the reasons outlined above.

---

[15] While law enforcement did in fact seize thirty-two devices from appellant's home, most of the devices did not possess any relevant information to the case. For example, included in this list of thirty-two devices were five game consoles with no relevant information: two Nintendo Switch consoles, a PlayStation 3, a Game Power device, and a PlayStation Vita. Also, of these thirty-two devices, ten were external hard drives, only two of which contained relevant information. Overall, only three of the thirty-two devices contained relevant information: appellant's cell phone, and two external hard drives.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge POND and Judge STEELE, concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court